# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AES THAMES, L.L.C.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 11-10334 (KJC)<br><br>Hearing Date: July 26, 2011 at 3:00 p.m. (ET)<br>Objection Deadline: July 19, 2011 at 4:00 p.m. (ET) |

## DEBTOR'S MOTION FOR AN ORDER EXTENDING ITS EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO PURSUANT TO BANKRUPTCY CODE SECTION 1121(d)

The above captioned debtor and debtor in possession (the "Debtor") hereby submits the Debtor's Motion for an Order Extending Its Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Bankruptcy Code section 1121(d) (the "Motion"). In support of the Motion, the Debtor represents as follows:

## BACKGROUND

1. On February 1, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended or modified, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3. No trustee or examiner or has been appointed in the Debtor's chapter 11 case.

---

[1] The Debtor's Tax I.D. No. is xx-xxx8195. The address for AES Thames, L.L.C. is 141 Depot Rd., Uncasville, CT 06382.

{864.001-W0014787.}

4. On February 15, 2011, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this case pursuant to Bankruptcy Code section 1102(a)(1).

5. The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the *Declaration of Brian Chatlosh in Support of First Day Motions* (the "Chatlosh Declaration") filed on the Petition Date and incorporated herein by reference.

6. As set forth in the Chatlosh Declaration, the Debtor owns and operates a coal-fired power plant (the "Facility") located in Montville, CT. Smurfit owns the land on which the Facility is located (the "Property"). On November 25, 1986, predecessors to Smurfit Stone-Container Corporation ("Smurfit") and the Debtor entered into that certain Ground Lease (the "Ground Lease"), pursuant to which the Property is leased to the Debtor for the purpose of operating the Facility.

7. The Debtor's bankruptcy filing was precipitated by two factors: (a) the increased cost of energy production and (b) the uneconomic and onerous provisions of (i) the Electricity Purchase Agreement (as amended or modified, the "EPA") with Connecticut Power & Light ("CL&P"), and (ii) the Steam Sale Agreement (the "SSA") with Smurfit. Since the commencement of its case, the Debtor has been pursuing negotiations with CL&P and Smurfit regarding a restructuring or rejection of these unprofitable contracts. The restructuring of these contracts and the fixing and treatment of CL&P's and Smurfit's claims are a predicate to the Debtor's reorganization and emergence from bankruptcy.

8. In connection with its restructuring, the Debtor also is exploring selling electricity and related products to the New England Electricity Grid as an exempt wholesale

generator (an "EWG"). The Debtor has filed a motion to engage Charles River Associates to assist it in evaluating and in understanding the regulatory environment and the tariff requirements of the forward capacity market on the Facility.

## JURISDICTION

9. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory and legal predicate for the relief sought herein is Bankruptcy Code section 1121(d) together with Bankruptcy Rule 9006(b)(1) and Local Rule 9006-2.

## RELIEF REQUESTED

10. Bankruptcy Code section 1121(b) provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Plan Period"). Bankruptcy Code section 1121(c)(3) provides that if the debtor files a plan within the 120-day Exclusive Plan Period, it has a period of 180 days after the commencement of the case to obtain acceptance of such a plan, during which time competing plans may not be filed (the "Solicitation Period").

11. The initial Exclusive Plan Period and Solicitation Period of the Debtor (collectively, the "Exclusive Periods") are set to expire on June 1, 2011 and July 31, 2011, respectively.[2] The Debtor requests a 120-day extension of the Exclusive Periods to September 29, 2011 and November 28, 2011, respectively, pursuant to Bankruptcy Code section 1121(d), without prejudice to its rights to seek additional extensions thereof.

---

[2] Pursuant to Local Rule 9006-2, the deadline shall be automatically extended until the Court acts on the motion, without the necessity for the entry of a bridge order.

## BASIS FOR RELIEF

12. The Court is authorized to extend a debtor's exclusive periods upon a demonstration of cause, pursuant to Bankruptcy Code section 1121(d), which provides:

> Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

13. Bankruptcy Code section 1121(d) allows the Court to extend a debtor's Exclusive Periods for cause. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. See H.R. Rep. No. 95-595, at 231, 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interest by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

14. In determining whether a debtor has had an adequate opportunity to negotiate a chapter 11 plan, a court should consider a variety of factors to assess the totality of circumstances affecting whether or not "cause" exists to extend the Exclusivity Periods. In re McLean Industries, Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). The McLean Industries court held that the relevant factors are:

(a) the size and complexity of the debtor's case;

(b) the existence of good faith progress towards reorganization;

(c) a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtor's] reorganization demands";

(d) existence of an unresolved contingency; and

(e) the fact that the debtor is paying its bills as they come due.

McLean Industries, 87 B.R. at 834 (citations omitted).

15. An application of the foregoing standards to the facts demonstrates sufficient "cause" to grant the Debtor's requested extensions.

A. **The Size and Complexity of the Debtor's Case**

16. In addition to the McLean Industries court, other courts have identified size and complexity of a chapter 11 case as a determining factor of whether a court should grant an extension of the exclusive periods. In re Central Jersey Airport Services, 282 B.R. 176, 184 (Bankr. D. N.J. 2002); In re Texaco, Inc., 76 B.R. 322. 326 (Bankr. S.D. N.Y. 1987) (finding "cause" to extend exclusivity based on size of case); In re Manville Forest Prods. Corp., 31 B.R. 991, 995 (S.D.N.Y. 1983) ("[T]he sheer mass, weight, volume and complications of the Manville filings undoubtedly justify a shakedown period").

17. Although not Texaco or Manville, the extension is appropriate because since the Petition Date, the Debtor has been focused on the complex tasks required to maximize value for all creditors. The Debtor and its professional have been diligent in handling numerous typical and atypical reorganizational issues.

18. More specifically, the extension is appropriate because the Debtor has expended considerable time and effort by:

    a. handling countless operational issues, including responding to creditor, vendor, dealer, customer and employee concerns and questions;

    b. preparing and filing the Debtor's schedules and statements of financial affairs;

    c. preparing for and attending the formation meeting of the Committee and the section 341 meeting of creditors;

      d.     preparing and filing a motion to allow the Debtor to finance certain insurance premiums;

      e.     preparing and filing a motion to allow the Debtor to engage Hobart Truesdell as an independent director;

      f.     preparing and filing a motion to approve the Debtor's short term compensation plan;

      g.     preparing and filing a motion to allow the Debtor to engage Charles River Associates as regulatory advisor; and

      h.     preparing and filing a bar date motion.

19. In addition, the Debtor has been addressing certain matters relating to the bankruptcy filing, the use of assets that may constitute cash collateral and various other operational matters. On February 3, 2011, the Court entered the Interim Order (I) Authorizing Debtor's Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to CL&P and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 22] (the "Interim Order"). The Debtor's authority to use its cash collateral has since been extended three additional times by subsequent interim orders dated February 28, 2011, March 30, 2011 and May 2, 2011. The Debtor has also been working with CL&P, Smurfit and other parties regarding its key contracts. Although the Debtor has been working diligently, it has not had sufficient time to renegotiate its key contracts.

20. The initial Exclusive Periods do not provide adequate time to develop a consensual chapter 11 plan for cases of the size and complexity of the Debtor's case. This is especially true given the Debtor's focus early in this case in working to renegotiate its key contracts.

### B. Progress Toward Development of a Consensual Plan

21. The Debtor has made progress towards developing a plan and attempting to gain consensus of its creditors, another factor courts have considered in determining whether to grant an extension of a debtor's exclusive periods. Since the Petition Date, the Debtor has consulted with the United States Trustee on all material matters that have arisen in its bankruptcy case and has provided detailed updates as to the Debtor's cash position and assets.

22. The Debtor has had an in person meeting with the Committee in New York City to discuss the status and direction of this case, and it continues to work closely with the Committee and to keep the Committee informed on its progress. The Debtor has also had discussions with Smurfit, CL&P and other major parties regarding renegotiations of contracts. Negotiations with Smurfit, which are necessary for the Debtor's reorganization, have been slowed in some respects because of Smurfit's acquisition by Rock-Tenn Co. Finally, the Debtor has engaged an independent director and Charles River Associates to assist with developing a reorganization strategy.

### C. The Debtor is Requesting Extensions of the Exclusive Periods for Appropriate Purposes

23. The Debtor is seeking extensions of the Exclusive Periods to enable the Debtor to continue to pursue it's negotiations and explore its options as an EWG, and not for the purpose of pressuring creditors to accede to any demands. McLean Industries, 87 B.R. at 834.

24. Since the inception of the Debtor's chapter 11 case, the Debtor has worked closely with its creditors and has complied with the obligations placed on Debtor under the Bankruptcy Code. In meeting its fiduciary duties to its creditors, the Debtor has recognized the need to deal with all parties in interest in this case, and has consistently conferred with these

constituencies on every major substantive and administrative matter, almost always reaching an agreement or a compromise.

25. The Debtor's request to extend the Exclusive Periods is made in good faith and will afford the Debtor an opportunity to propose a realistic and viable chapter 11 plan. Extending the Exclusive Periods would provide the Debtor with the opportunity to continue to negotiate with creditors and other parties in interest and propose a consensual chapter 11 plan. Filing a chapter 11 plan at this time would be not be in the Debtor's or any other constituency's best interest and would defeat the purpose of section 1121 of the Bankruptcy Code.

### D. An Extension of the Exclusive Periods is Required to Resolve Contingencies

26. The Debtor is exploring its options with respect to whether a plan is feasible and how to maximize value, including negotiations of its key contracts. The Debtor is also exploring its options as an EWG, including consulting with Charles River Associates on the complex regulatory framework.

### E. The Debtor is Paying its Ongoing Expenses as they Become Due

27. Since the inception of this bankruptcy case, the Debtor has been effectively paying bills as they become due and preserving cash. The Debtor has limited cash and has minimized its expenses by placing its Facility into standby mode and taking other measures designed to minimize its cash burn. The Debtor's cash management and prudent decisions regarding its assets since the inception of this bankruptcy case have enhanced the Debtor's bankruptcy estate and the potential recovery for its creditors.

28. The Debtor also notes that relief similar to that requested in this Motion has been granted to other debtors in this jurisdiction in other chapter 11 cases. See, e.g., NEC Holdings Corp., No. 10-11890 (Bank. D. Del. Oct. 4, 2010) (Walsh, J.); Centaur, LLC, No. 10-

{864.001-W0014787.}
8

10799 (Bank. D. Del. July 28, 2010) (Carey, J.); GRA Liquidation, Inc., No. 09-10170 (Bankr. D. Del. June 15, 2009) (Carey, J.); In re New Century TRS Holdings, Inc., No. 07-10416 (Bankr. D. Del. January 22, 2008) (Carey, J.); In re Nellson Nutraceutical, Inc., No. 06-10072 (Bankr. D. Del. March 12, 2007) (Sontchi, J.).

29. The Debtor has continued to comply with its obligations under the Bankruptcy Code and has worked closely and diligently with other parties in interest. Allowing this relatively modest extension of the Exclusive Periods will allow the Debtor a full and fair opportunity to formulate and propose a confirmable chapter 11 plan and is appropriate under the circumstances of this bankruptcy case. Indeed, the extension of the Exclusive Periods will allow the Debtor to continue to pursue negotiations and attempt to propose a consensual plan and solicit acceptances of such a plan, without the deterioration and disruption of the Debtor's bankruptcy case that might be caused by the filing of competing plans by nondebtor parties. The requested extension of the Exclusive Periods of ninety days to September 29, 2011 and November 28, 2011, respectively, does not prejudice any parties in interest and avoids the potential encouragement of the Debtor or any other parties in interest to file an insufficient and non-consensual chapter 11 plan.

## NOTICE

30. Notice of this Motion has been given to (a) the Office of the United States Trustee for the District of Delaware; (b) CL&P; (c) the Committee; and (d) those entities having filed and served requests for notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

31. No previous request for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor prays that the exclusive time within which the Debtor may file a plan or plans be extended up through and including September 29, 2011; and the time within which the Debtor may obtain acceptance of the plan or plans be extended through and including November 28, 2011; and that the Debtor have such other and further relief as this Court may deem just and proper.

Dated: May 31, 2011  
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Adam G. Landis

Adam G. Landis (No. 3407)  
Kerri K. Mumford (No. 4186)  
J. Landon Ellis (No. 4852)  
Jeffrey R. Drobish (No. 5437)  
919 Market Street, Suite 1800  
Wilmington, DE 19801  
Telephone: (302) 467-4400  
Facsimile: (302) 467-4450  
Email: landis@lrclaw.com  
       mumford@lrclaw.com  
       ellis@lrclaw.com  
       drobish@lrclaw.com

*Counsel to Debtor and Debtor in Possession*