IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> AES THAMES, L.L.C.,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 11-10334 (KJC) <br><br> Ref. No. 8, 22, 73, 133, 178, 226, 301, 373 |

**FINAL ORDER (I) AUTHORIZING DEBTOR'S
LIMITED USE OF CASH COLLATERAL, (II) GRANTING
REPLACEMENT LIENS AND ADEQUATE PROTECTION TO CL&P**

Upon the Motion of the Debtor and Debtor in Possession for an Order Authorizing the Debtor's Use Of Cash Collateral (the "Motion");[2] and upon the Chatlosh Declaration; and upon the interim hearing having been held by the Court on February 3, 2011 (the "First Interim Hearing") to consider the relief sought in the Motion; and upon the Court's entry of the Interim Order (I) Authorizing Debtor's Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to CL&P and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 22] (the "First Interim Order"); and upon a second interim hearing having been held by the Court on February 28, 2011 (the "Second Interim Hearing") to consider the relief sought in the Motion; and upon the Court's entry of the Second Interim Order (I) Authorizing Debtor's Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to CL&P and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Second Interim Order"); and upon a third interim hearing having been scheduled by the Court on March 30, 2011 (the "Third Interim Hearing") to consider the relief sought in the Motion; and upon the Court's entry of the Third Interim Order (I) Authorizing Debtor's Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to

---

[1] The Debtor's Tax I.D. No. is xx-xxx8195. The address for AES Thames, L.L.C. is 141 Depot Rd., Uncasville, CT 06382.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

{864.002-W0016244.3}

CL&P and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Third Interim Order"); and upon a fourth interim hearing having been scheduled by the Court for May 3, 2011 (the "Fourth Interim Hearing") to consider the relief sought in the Motion; and upon the Court's entry of the Fourth Interim Order (I) Authorizing Debtor's Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to CL&P and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Fourth Interim Order"); and upon a fifth interim hearing having been scheduled by the Court for June 2, 2011 (the "Fifth Interim Hearing") to consider the relief sought in the Motion; and upon the Court's Fifth Interim Order (I) Authorizing Debtor's Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to CL&P and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Fifth Interim Order"); and upon a sixth interim hearing having been scheduled by the Court for July 26, 2011 (the "Sixth Interim Hearing," and together with the prior interim hearings described herein, the "Prior Interim Hearings"); and upon the Court's Sixth Interim Order (I) Authorizing Debtor's Limited Use of Cash Collateral, (II) Granting Replacement Liens and Adequate Protection to CL&P and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Sixth Interim Order," and together with the prior interim orders described herein, the "Prior Interim Orders"); and upon a final hearing having been scheduled by the Court for September 1, 2011 (the "Final Hearing") to consider the relief sought in the Motion; and the Court having considered the offers of proof, evidence adduced, and the statements of counsel at the Prior Interim Hearings; and upon agreement of the parties submitted in lieu of the Final Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions contained herein is necessary and essential to enable the Debtor to operate as a debtor in possession and to maintain the value of the Debtor's assets, and that such relief is fair

and reasonable and that entry of this Final Order is in the best interest of the Debtor and its estate and creditors; and upon due deliberation and good cause having been shown to grant the relief sought in the Motion:

**IT IS HEREBY FOUND THAT:**

A. On February 1, 2011 ("<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "<u>Case</u>"), and has continued with the management and operation of its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. The Debtor has requested entry of this Final Order, pursuant to Bankruptcy Rule 4001(b)(2), and has need to obtain the use of cash in which CL&P may claim in interest in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll, to pay the costs of administration of their estates, to comply with regulatory requirements and to satisfy other working capital and operational needs.

C. The Debtor's access to sufficient working capital and liquidity through the use of cash and cash in which CL&P may claim an interest is vital to the preservation and maintenance of the value of the Debtor's assets and to the prospects of a successful reorganization.

D. Without continued and uninterrupted access to cash in which CL&P may assert an interest, the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor and its estate would occur. Absent the entry of this Final Order, the Debtor's estate will be immediately and irreparably harmed.

E. Notice of the requested relief sought at the Final Hearing was provided by the Debtor to: (a) the Office of the United States Trustee; (b) counsel to the Official Committee of

Unsecured Creditors (the "Committee"); (c) counsel to CL&P, and (d) all parties seeking notice pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought in the Motion, the Court concludes that sufficient and adequate notice of the Final Hearing has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014 and Bankruptcy Code section 102(1) as required by Bankruptcy Code sections 361 and 363, and that no further notice of, or hearing on, the relief sought at the Final Hearing and the relief granted herein is necessary or required.

F. Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

G. Good, adequate and sufficient cause has been shown to justify entry of this Final Order. Among other things, granting the relief set forth in this Final Order will permit the Debtor to meet its expenses, consistent with the Budget (defined below) and to maximize value for the benefit of all creditors.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARINGS, AND THE STATEMENTS OF COUNSEL, IT IS HEREBY ORDERED:**

1. Subject to the terms and conditions of this Final Order, the Court hereby authorizes the Debtor's use of cash, including cash in which CL&P may assert an interest and may therefore constitute Cash Collateral, consistent with the budget (the "Budget"), which Budget may be amended from time to time with the written agreement of CL&P and the Debtor.[3] The Debtor shall use cash and cash in which CL&P claims an interest only as set forth in the

---

[3] For the avoidance of doubt, actual disbursements for Allowed Professional Fees (defined below) shall not exceed the amounts set forth in this Budget or Prior Interim Orders in the aggregate, not monthly, amounts.

{864.002-W0016244.3}

4

Budget, unless otherwise ordered by the Court or agreed upon by the Debtor and CL&P, provided, however, that nothing herein shall amend or modify that certain Term Sheet for Global Resolution of Disputes Among the Parties, dated August 19, 2011 (the "Term Sheet"). For the avoidance of doubt, Net Proceeds of any Bankruptcy Code Section 363 sale (as described in the Term Sheet) shall not constitute cash or cash in which CL&P claims an interest in that is subject to this Final Order.

2. As adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined below), the Debtor hereby grants CL&P a replacement lien on the Cash Collateral, provided, however, that such replacement lien shall be granted solely and exclusively to the extent CL&P presently has a valid, perfected, enforceable security interest in, and lien upon Cash Collateral (the "Adequate Protection Replacement Lien"). The Adequate Protection Replacement Lien shall be effective and perfected upon the entry of this Final Order and without the necessity of the execution by the Debtor of security agreements, financing statements or other agreements, provided, however, and for the avoidance of doubt, that such Adequate Protection Replacement Lien shall be granted solely and exclusively in the amount and to the extent CL&P presently has a valid, perfected, and enforceable security interest in, and lien upon, Cash Collateral. Collateral Diminution shall mean an amount equal to the decrease in value, if any, of the interest of CL&P in the Cash Collateral as of the Petition Date, upon which CL&P has a valid, perfected, enforceable and non-avoidable lien or security interest, and to the extent that such decrease, if any, is caused from and after the Petition Date, all as determined by this Court.

3. The Adequate Protection Replacement Liens granted by this Final Order shall be subject to the payment of (a) any unpaid fees payable to the United States Trustee pursuant to 28
{864.002-W0016244.3}

U.S.C. § 1930; (b) any unpaid fees payable to the Clerk of the Court; and (c) (i) to the extent provided for in the Budget, the unpaid and outstanding fees and expenses actually incurred on or after the Petition Date (regardless of when incurred or earned), by attorneys, accountants and other professionals retained by the Debtor or the Committee under sections 327, 363 or 1102(a) of the Bankruptcy Code (collectively, the "Professionals"), which have been or subsequently are allowed by a final order of the Bankruptcy Court pursuant to sections 326, 328, 330 or 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees"); and (ii) following the termination or expiration of this Final Order, the Allowed Professional Fees not in excess of $250,000 for the Debtor's Professionals and not in excess of $250,000 for the Committee's Professionals (collectively, the "Carve-Out"). The Carve-Out shall survive the termination of the Final Order. The Adequate Protection Replacement Liens shall not be subject to the doctrines of marshalling or surcharge (under § 506(c) or otherwise), during the period of this Final Order.

4. CL&P asserts that prior to the Petition Date, the Debtor and CL&P entered into a Security Agreement dated November 25, 1986 (with any amendments thereto, the "Security Agreement") granting CL&P, a first position secured lien (the "Pre-Petition Liens") on, among other things, the Debtor's facility, equipment, inventory, accounts, claims, contract rights, licenses, permits, insurance policies and all replacements, products and proceeds of the foregoing (the "Pre-Petition Collateral").

5. As further adequate protection of CL&P's asserted interests in the Pre-Petition Collateral, the Debtor shall pay the reasonable fees and expenses of Nixon Peabody LLP, Womble, Carlyle, Sandridge & Rice, PLLC and The Brattle Group incurred solely in connection with this Chapter 11 Case upon submission of detailed invoices to the Debtor with copies to the Committee and the United States Trustee, provided that such fees and disbursements shall be

paid only to the extent that such fees and disbursements relate to Pre- Petition Collateral against which CL&P has a valid, perfected and enforceable lien (the "CL&P Chapter 11 Professional Fees"). The total amount of CL&P Chapter 11 Professional Fees incurred in connection with this Case and submitted for payment pursuant to this Final Order and/or the Prior Interim Orders shall not exceed $420,000, provided that the Closing Date set forth in the Term Sheet occurs on or before December 15, 2011. The CL&P Chapter 11 Professional Fees shall be subject to disgorgement or reallocation upon the successful challenge of CL&P's liens, claims or security interests in the Pre-Petition Collateral or reallocation upon a determination of the allowed amount of CL&P's claim(s).

6. The Debtor shall promptly pay all reasonable CL&P Chapter 11 Professional Fees within twenty (20) business days after receipt of such invoices. Notwithstanding the foregoing, the Debtor, the Committee or the United States Trustee may object to such fees and expenses in writing within fifteen (15) business days of receipt of such invoice (a "Fee Objection"). Any such Fee Objection must identify with specificity the particular objectionable entries. If such objection cannot be resolved within five (5) business days of service of such invoice (which deadline may be extended by mutual agreement of CL&P and the objecting party), the objecting party shall file with the Court and serve upon such professional a Fee Objection as to the disputed fees and expenses; provided that the Debtor shall timely pay in accordance with this Final Order any fees, costs and expenses not subject to a Fee Objection. Upon the filing of a Fee Objection, this Court shall schedule and conduct a hearing to determine the allowance of the fees and expenses identified therein. Such hearing will, at the convenience of the Court, take place on the earliest to occur of (i) the next regularly scheduled pre-set hearing date in the Chapter 11 Case; or (ii) such other date as the Court sets. The Debtor shall remit payment promptly to the

applicable professional for such fees and expenses upon entry of a final order allowing such fees and expenses.

7. The validity, perfection, enforceability, and extent of the Pre-Petition Liens shall be established for all purposes in this case, except to the extent an order is entered otherwise with respect to the validity, perfection, enforceability, and extent of the Pre-Petition Liens in connection with the resolution of the Debtor's Complaint against CL&P, adversary case number 11-52762, which, among other things, challenges the validity, perfection, enforceability, and extent of the Pre- Petition Liens and any potential claims of the Debtor or its estate against CL&P (the "CL&P Adversary Proceeding"), provided, however, that notwithstanding the foregoing, the Pre-Petition Liens and any claims of CL&P shall be treated only in a manner consistent with the Term Sheet.. In the event of a conversion to chapter 7 or the appointment of a chapter 11 trustee, the chapter 7 trustee or a chapter 11 trustee shall have standing to continue to prosecute the CL&P Adversary Proceeding.

8. Notwithstanding anything to the contrary contained in this Final Order or the Security Agreement, Komatsu Financial Limited Partnership ("Komatsu") and CL&P agree that to the extent valid and enforceable, the Pre-Petition Lien and the Adequate Protection Replacement Lien do not extend, attach or otherwise apply in any way to the following equipment: one (1) New Komatsu D155AX-6 Crawler Dozer S/N 80827 w/Rockland 32 Yd Coal Dozer Blade S/N R54888, together with all accessions, attachments, replacements, substitutions, modifications and additions thereto (collectively, the "Komatsu Collateral"). Komatsu shall have no obligation hereunder or otherwise to commence or file a Lien Challenge to protect its interest in the Komatsu Collateral.

9. The Debtor is authorized to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby. The stay of Bankruptcy Code section 362 is hereby modified to the extent required, if any, to permit the parties to effectuate the transactions contemplated by this Final Order.

10. The provisions of this Final Order shall be binding upon any trustee appointed during this Case or upon a conversion of this Case to a case under Chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Case to a Chapter 7 case, or dismissing the Case, or any order which may be entered confirming or consummating any plan(s) of reorganization.

11. The terms of this Final Order shall be valid and binding upon the Debtor, all creditors of the Debtor and all other parties in interest from and after the entry of this Final Order by this Court. In the event this Court stays, modifies or vacates any of the provisions of this Final Order following any further hearing, such modifications, stays or vacation shall not affect the rights of CL&P granted pursuant to this Final Order.

12. Nothing contained in this Final Order shall prejudice the right of the Debtor, or any appointed committee or any creditor or party in interest with requisite standing to object to or to challenge (a) the validity, extent, perfection, enforceability or priority of the security interests and liens of CL&P, or (b) the extent, validity, allowability, enforceability, priority or status of any pre-petition debt of CL&P.

13. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.

Dated: Sept 1, 2011
Wilmington, Delaware

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

**AES Thames, LLC**
Updated Weekly Cash Flow - CONFIDENTIAL
*$ in thousands*

|  |  | 9/3/11 | 9/10/11 | 9/17/11 | 9/24/11 | 10/1/11 | 10/8/11 | 10/15/11 | 10/22/11 | 10/29/11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Total Receipts | A | $0.0 | $0.0 | $1,000.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| **Disbursements** | | | | | | | | | | |
| Payroll (Includes Benefits & Severance) | B | (160.0) | (151.0) | (41.0) | (161.0) | (150.0) | (1.0) | (191.0) | (1.0) | (160.0) |
| Accounts Payable | C | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) |
| Operating & Maintenance | D | (86.2) | 0.0 | (310.0) | 0.0 | 0.0 | (36.2) | (50.0) | 0.0 | 0.0 |
| Coal Inventory | E | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Transportation | F | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Ash Expense | G | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Other Fuel Costs | H | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Misc. Costs (Sales Tax / Bank Service Charges) | I | (2.4) | 0.0 | (1.0) | 0.0 | (5.0) | 0.0 | (1.0) | 0.0 | 0.0 |
| Total Operational Disbursements | | (304.3) | (206.7) | (407.7) | (216.7) | (210.7) | (92.9) | (297.7) | (56.7) | (215.7) |
| **Cash Flow Before CapEx** | | (304.3) | (206.7) | 592.3 | (216.7) | (210.7) | (92.9) | (297.7) | (56.7) | (215.7) |
| CapEx | J | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Cash Flow from Operations** | | (304.3) | (206.7) | 592.3 | (216.7) | (210.7) | (92.9) | (297.7) | (56.7) | (215.7) |
| Debtor Advisors Expenses | | 0.0 | 0.0 | 0.0 | (250.2) | 0.0 | 0.0 | 0.0 | 0.0 | (250.2) |
| UCC Advisors / Committee Member Expenses | | 0.0 | 0.0 | 0.0 | (110.0) | 0.0 | 0.0 | 0.0 | 0.0 | (125.0) |
| Adequate Protection Payment | | 0.0 | 0.0 | (25.0) | 0.0 | (12.1) | (25.0) | 0.0 | 0.0 | (25.0) |
| Other Restructuring Expenses | | 0.0 | 0.0 | 0.0 | (10.0) | 0.0 | 0.0 | 0.0 | 0.0 | (10.0) |
| Total Restructuring Expenses | K | 0.0 | 0.0 | (25.0) | (370.2) | (12.1) | (25.0) | 0.0 | 0.0 | (410.2) |
| **Total Cash Flow** | | (304.3) | (206.7) | 567.3 | (586.9) | (222.8) | (117.9) | (297.7) | (56.7) | (625.9) |
| Beginning Cash | | 5,927.9 | 5,623.6 | 5,416.9 | 5,984.2 | 5,397.3 | 5,174.5 | 5,056.7 | 4,759.0 | 4,702.3 |
| Total Cash Flow | | (304.3) | (206.7) | 567.3 | (586.9) | (222.8) | (117.9) | (297.7) | (56.7) | (625.9) |
| **Ending Cash** | | $5,623.6 | $5,416.9 | $5,984.2 | $5,397.3 | $5,174.5 | $5,056.7 | $4,759.0 | $4,702.3 | $4,076.4 |

STRICTLY CONFIDENTIAL

## AES Thames, LLC
Updated Weekly Cash Flow - CONFIDENTIAL
*$ in thousands*

|  |  | 11/5/11 | 11/12/11 | 11/19/11 | 11/26/11 | 12/3/11 | 12/10/11 | 12/17/11 | 12/24/11 | 12/31/11 | Total |
|---|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| Total Receipts | A | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $1,000.0 |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Includes Benefits & Severance) | B | 0.0 | (1.0) | (191.0) | (1.0) | (160.0) | (1.0) | (191.0) | (1.0) | (310.0) | ($1,872.0) |
| Accounts Payable | C | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (55.7) | (1,002.7) |
| Operating & Maintenance | D | (50.2) | 0.0 | (50.0) | 0.0 | (50.2) | 0.0 | (50.0) | 0.0 | 0.0 | (682.6) |
| Coal Inventory | E | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Transportation | F | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Ash Expense | G | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Other Fuel Costs | H | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Misc. Costs (Sales Tax / Bank Service Charges) | I | (5.0) | 0.0 | (1.0) | 0.0 | (5.0) | 0.0 | (1.0) | 0.0 | (5.0) | (26.4) |
| Total Operational Disbursements |  | (110.9) | (56.7) | (297.7) | (56.7) | (270.9) | (56.7) | (297.7) | (56.7) | (370.7) | (3,583.7) |
| Cash Flow Before CapEx |  | (110.9) | (56.7) | (297.7) | (56.7) | (270.9) | (56.7) | (297.7) | (56.7) | (370.7) | (2,583.7) |
| CapEx | J | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Cash Flow from Operations |  | (110.9) | (56.7) | (297.7) | (56.7) | (270.9) | (56.7) | (297.7) | (56.7) | (370.7) | (2,583.7) |
| Debtor Advisors Expenses |  | 0.0 | 0.0 | 0.0 | (250.2) | 0.0 | 0.0 | 0.0 | 0.0 | (250.2) | (1,000.7) |
| UCC Advisors / Committee Member Expenses |  | 0.0 | 0.0 | 0.0 | (100.0) | 0.0 | 0.0 | 0.0 | 0.0 | (100.0) | (435.0) |
| Adequate Protection Payment |  | (12.1) | 0.0 | (25.0) | 0.0 | (12.1) | 0.0 | (25.0) | 0.0 | (12.1) | (173.4) |
| Other Restructuring Expenses |  | 0.0 | 0.0 | 0.0 | (10.0) | 0.0 | 0.0 | 0.0 | 0.0 | (10.0) | (40.0) |
| Total Restructuring Expenses | K | (12.1) | 0.0 | (25.0) | (360.2) | (12.1) | 0.0 | (25.0) | 0.0 | (372.3) | (1,649.1) |
| Total Cash Flow |  | (123.0) | (56.7) | (322.7) | (416.9) | (283.0) | (56.7) | (322.7) | (56.7) | (743.0) | (4,232.8) |
| Beginning Cash |  | 4,076.4 | 3,953.4 | 3,896.7 | 3,574.0 | 3,157.1 | 2,874.2 | 2,817.5 | 2,494.8 | 2,438.1 | 5,927.9 |
| Total Cash Flow |  | (123.0) | (56.7) | (322.7) | (416.9) | (283.0) | (56.7) | (322.7) | (56.7) | (743.0) | (4,232.8) |
| Ending Cash |  | $3,953.4 | $3,896.7 | $3,574.0 | $3,157.1 | $2,874.2 | $2,817.5 | $2,494.8 | $2,438.1 | $1,695.1 | $1,695.1 |

STRICTLY CONFIDENTIAL

# AES Thames, LLC
## Cash Flow Forecast Assumptions
## August 31, 2011

A. **Total Receipts** – Assumes receipt of $1 million payment from AES Corp. per the executed CL&P settlement term sheet. Receipt is subject to approval by AES Corp. and may not be received

B. **Payroll** – Assumes ordinary course payroll for 37 employees. Includes one-third of the 2011 STC payment to be escrowed, employee expense reimbursements and employee benefits

C. **Accounts Payable** – Includes post-petition items only

D. **Operating & Maintenance** – Includes utilities, insurance and pre-petition payments authorized by Court. Also includes ISO market registration fee, November and December 2011 rent payments and other related payments

E. **Coal Inventory** – Assumes no operations or expenses during the projection period

F. **Transportation** – Assumes no operations or expenses during the projection period

G. **Ash Expense** – Assumes no operations or expenses during the projection period

H. **Other Fuel Costs** – Assumes no operations or expenses during the projection period

I. **Miscellaneous Costs** – Includes monthly bank service charges and monthly sales tax payments

J. **Capital Expenditures** – Assumes no capital expenditures throughout the projection period

K. **Restructuring Expenditures** – Assumes Debtor advisors, UCC advisors and Debtor's Independent Director are paid 100% of their court approved fees on a monthly basis. Also assumes adequate protection payments (subject to Court approval) will be paid in full throughout the projection period. An aggregate of $400,000 in critical vendor payments has been approved by the Court. However, no critical vendor payments are projected during the projection period

STRICTLY CONFIDENTIAL