IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AES THAMES, L.L.C.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 11-10334 (KJC)<br><br>Hearing Date: September 22, 2011 at 11:00 a.m. ET<br>Objection Deadline: September 15, 2011 at 4:00 p.m. ET |

## DEBTOR'S SECOND MOTION FOR AN ORDER EXTENDING ITS EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO PURSUANT TO BANKRUPTCY CODE SECTION 1121(d)

The above captioned debtor and debtor in possession (the "Debtor") hereby submits the Debtor's Second Motion for an Order Extending Its Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Bankruptcy Code section 1121(d) (the "Motion"). In support of the Motion, the Debtor represents as follows:

### BACKGROUND

1. On February 1, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended or modified, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3. No trustee or examiner or has been appointed in the Debtor's chapter 11 case.

---

[1] The Debtor's Tax I.D. No. is xx-xxx8195. The address for AES Thames, L.L.C. is 141 Depot Rd., Uncasville, CT 06382.

4. On February 15, 2011, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this case pursuant to Bankruptcy Code section 1102(a)(1).

5. The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the *Declaration of Brian Chatlosh in Support of First Day Motions* (the "Chatlosh Declaration") filed on the Petition Date and incorporated herein by reference.

6. As set forth in the Chatlosh Declaration, the Debtor owns and operates a coal-fired power plant (the "Facility") located in Montville, CT. Smurfit owns the land on which the Facility is located (the "Property"). On November 25, 1986, predecessors to Smurfit Stone-Container Corporation ("Smurfit") and the Debtor entered into that certain Ground Lease (the "Ground Lease"), pursuant to which the Property is leased to the Debtor for the purpose of operating the Facility.

7. The Debtor's bankruptcy filing was precipitated by two factors: (a) the increased cost of energy production and (b) the uneconomic and onerous provisions of (i) the Electricity Purchase Agreement (as amended or modified, the "EPA") with Connecticut Power & Light ("CL&P"), and (ii) the Steam Sale Agreement (the "SSA") with Smurfit. Since the commencement of its case, the Debtor has been pursuing negotiations with CL&P and Smurfit regarding a restructuring or rejection of these unprofitable contracts. The restructuring of these contracts and the fixing and treatment of CL&P's and Smurfit's claims are a predicate to the Debtor's reorganization and emergence from bankruptcy.

8. On May 31, 2011, the Debtor filed the Debtor's Motion for an Order Extending Its exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Bankruptcy Code Section 1121(d) (the "First Exclusivity Extension Motion")

seeking to extend the Exclusive Periods (defined below) to September 29, 2011 and November 28, 2011, respectively. The Court has not yet ruled on this First Exclusivity Extension Motion.

9. On July 15, 2011, Smurfit and the Debtor executed the Term Sheet for Resolution of Motion to Assume Lease, SSA Claims and Related Issues (the "Smurfit Term Sheet"), which, among other things, provides, subject to certain conditions, that the Lease will be assumed effective as of confirmation of a plan or a sale of substantially all the assets of the Debtor.

10. On August 19, CL&P and the Debtor executed the Term Sheet for Global Resolution of Disputes Among the Parties, dated August 19, 2011 (the "CL&P Term Sheet"), which resolves certain issues between CL&P and the Debtor related to the EPA and other claims.

## JURISDICTION

11. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory and legal predicate for the relief sought herein is Bankruptcy Code section 1121(d) together with Bankruptcy Rule 9006(b)(1) and Local Rule 9006-2.

## RELIEF REQUESTED

12. Bankruptcy Code section 1121(b) provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Plan Period"). Bankruptcy Code section 1121(c)(3) provides that if the debtor files a plan within the 120-day Exclusive Plan Period, it has a period of 180 days after the commencement of the case to obtain acceptance of such a plan, during which time competing plans may not be filed (the "Solicitation Period").

13. The Debtor has filed a motion, which is still pending, to extend the Exclusive Plan Period and Solicitation Period of the Debtor (collectively, the "Exclusive Periods") through and including September 29, 2011 and November 28, 2011, respectively.[2] Given the proximately of these deadlines to the current hearing date, the Debtor requests a further 120-day extension of the Exclusive Periods to January 27, 2012 and March 27, 2012, respectively, pursuant to Bankruptcy Code section 1121(d), without prejudice to its rights to seek additional extensions thereof.

## BASIS FOR RELIEF

14. The Court is authorized to extend a debtor's exclusive periods upon a demonstration of cause, pursuant to Bankruptcy Code section 1121(d), which provides:

> Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

15. Bankruptcy Code section 1121(d) allows the Court to extend a debtor's Exclusive Periods for cause. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. See H.R. Rep. No. 95-595, at 231, 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interest by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

---

[2] Pursuant to Local Rule 9006-2, the deadline is automatically extended until the Court acts on the motion, without the necessity for the entry of a bridge order.

16. In determining whether a debtor has had an adequate opportunity to negotiate a chapter 11 plan, a court should consider a variety of factors to assess the totality of circumstances affecting whether or not "cause" exists to extend the Exclusivity Periods. In re McLean Industries, Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). The McLean Industries court held that the relevant factors are:

    (a)    the size and complexity of the debtor's case;

    (b)    the existence of good faith progress towards reorganization;

    (c)    a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtor's] reorganization demands";

    (d)    existence of an unresolved contingency; and

    (e)    the fact that the debtor is paying its bills as they come due.

McLean Industries, 87 B.R. at 834 (citations omitted).

17. An application of the foregoing standards to the facts demonstrates sufficient "cause" to grant the Debtor's requested extensions.

### A. The Size and Complexity of the Debtor's Case

18. In addition to the McLean Industries court, other courts have identified size and complexity of a chapter 11 case as a determining factor of whether a court should grant an extension of the exclusive periods. In re Central Jersey Airport Services, 282 B.R. 176, 184 (Bankr. D. N.J. 2002); In re Texaco, Inc., 76 B.R. 322. 326 (Bankr. S.D. N.Y. 1987) (finding "cause" to extend exclusivity based on size of case); In re Manville Forest Prods. Corp., 31 B.R. 991, 995 (S.D.N.Y. 1983) ("[T]he sheer mass, weight, volume and complications of the Manville filings undoubtedly justify a shakedown period").

19. Although not Texaco or Manville, the extension is appropriate because since the Petition Date, the Debtor has been focused on the complex tasks required to maximize

value for all creditors. The Debtor and its professional have been diligent in handling numerous typical and atypical reorganizational issues.

20. More specifically, the extension is appropriate because the Debtor has expended considerable time and effort by:

    a. handling countless operational issues, including responding to creditor, vendor, dealer, customer and employee concerns and questions;

    b. preparing and filing the Debtor's schedules and statements of financial affairs;

    c. preparing for and attending the formation meeting of the Committee and the section 341 meeting of creditors;

    d. preparing and filing a motion to allow the Debtor to finance certain insurance premiums;

    e. preparing and filing a motion to allow the Debtor to engage Hobart Truesdell as an independent director;

    f. preparing and filing a motion to approve the Debtor's short term compensation plan;

    g. preparing and filing a motion to allow the Debtor to engage Charles River Associates as regulatory advisor; and

    h. preparing and filing a bar date motion;

    i. extensively negotiating with Smurfit and CL&P regarding critical contracts and reaching an agreement with respect to a resolution of each of the Debtor's most significant contracts.

21. The initial Exclusive Periods do not provide adequate time to develop a consensual chapter 11 plan for cases of the size and complexity of the Debtor's case. This is especially true given the Debtor's focus early in this case in resolving the gatekeeping issues with CL&P and Smurfit.

### B. Progress Toward Development of a Consensual Plan

22. The Debtor has made significant progress towards developing a plan and attempting to gain consensus of its creditors, another factor courts have considered in determining whether to grant an extension of a debtor's exclusive periods. Pursuant to the CL&P Term Sheet, subject to certain conditions, the Debtor has resolved CL&P's approximately $300 million secured claim and asserted lien against substantially all of the Debtor's assets, which includes a sharing with general unsecured creditors of net sale proceeds. In addition, the Debtor has resolved issues with Smurfit pursuant to the Smurfit Term Sheet, a necessary precursor to the effective marketing of the Debtor's assets and ongoing operation of its business.

23. Moreover, the Debtor has begun marketing its assets and business. In connection therewith, several interested parties have executed nondisclosure agreements and commenced due diligence. The Debtor and its professionals are working expeditiously to move this process forward.

24. The Debtor also has continued to consult with the United States Trustee and Committee on all material matters that have arisen in its bankruptcy case and has provided detailed updates as to the Debtor's status.

25. The Debtor's efforts to date provide the framework for a plan, but there is still work to be done and the Debtor needs additional time to finalize its reorganization strategy.

### C. The Debtor is Requesting Extensions of the Exclusive Periods for Appropriate Purposes

26. The Debtor is seeking extensions of the Exclusive Periods to enable the Debtor to continue to market its assets and develop and implement a plan of reorganization, and not for the purpose of pressuring creditors to accede to any demands. <u>McLean Industries</u>, 87 B.R. at 834.

27. Since the inception of the Debtor's chapter 11 case, the Debtor has worked closely with its creditors and has complied with the obligations placed on Debtor under the Bankruptcy Code. In meeting its fiduciary duties to its creditors, the Debtor has recognized the need to deal with all parties in interest in this case, and has consistently conferred with these constituencies on every major substantive and administrative matter, almost always reaching an agreement or a compromise.

28. The Debtor's request to extend the Exclusive Periods is made in good faith and will afford the Debtor an opportunity to propose a realistic and viable chapter 11 plan. Extending the Exclusive Periods would provide the Debtor with the opportunity to continue to negotiate with creditors and other parties in interest and propose a consensual chapter 11 plan. Filing a chapter 11 plan at this time would be not be in the Debtor's or any other constituency's best interest and would defeat the purpose of section 1121 of the Bankruptcy Code.

**D.  An Extension of the Exclusive Periods is Required to Resolve Contingencies**

29. The Debtor continues to market its assets and needs to complete this process before developing a reorganization plan.

**E.  The Debtor is Paying its Ongoing Expenses as they Become Due**

30. Since the inception of this bankruptcy case, the Debtor has been effectively paying bills as they become due and preserving cash. The Debtor has limited cash and has minimized its expenses by placing its Facility into standby mode and taking other measures designed to minimize its cash burn. The Debtor's cash management and prudent decisions regarding its assets since the inception of this bankruptcy case have enhanced the Debtor's bankruptcy estate and the potential recovery for its creditors.

31. The Debtor also notes that relief similar to that requested in this Motion has been granted to other debtors in this jurisdiction in other chapter 11 cases. See, e.g., NEC

Holdings Corp., No. 10-11890 (Bank. D. Del. Oct. 4, 2010) (Walsh, J.); Centaur, LLC, No. 10-10799 (Bank. D. Del. July 28, 2010) (Carey, J.); GRA Liquidation, Inc., No. 09-10170 (Bankr. D. Del. June 15, 2009) (Carey, J.); In re New Century TRS Holdings, Inc., No. 07-10416 (Bankr. D. Del. January 22, 2008) (Carey, J.); In re Nellson Nutraceutical, Inc., No. 06-10072 (Bankr. D. Del. March 12, 2007) (Sontchi, J.).

32. The Debtor has continued to comply with its obligations under the Bankruptcy Code and has worked closely and diligently with other parties in interest. Allowing this relatively modest extension of the Exclusive Periods will allow the Debtor a full and fair opportunity to formulate and propose a confirmable chapter 11 plan and is appropriate under the circumstances of this bankruptcy case. Indeed, the extension of the Exclusive Periods will allow the Debtor to continue to pursue negotiations and attempt to propose a consensual plan and solicit acceptances of such a plan, without the deterioration and disruption of the Debtor's bankruptcy case that might be caused by the filing of competing plans by nondebtor parties. The requested extension of the Exclusive Periods of 120 days to January 27, 2012 and March 27, 2012, respectively, does not prejudice any parties in interest and avoids the potential encouragement of the Debtor or any other parties in interest to file an insufficient and non-consensual chapter 11 plan.

## NOTICE

33. Notice of this Motion has been given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to CL&P; (c) counsel to the Committee; and (d) those entities having filed and served requests for notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

34. No previous request for the specific relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor prays that the exclusive time within which the Debtor may file a plan or plans be extended up through and including January 27, 2012; and the time within which the Debtor may obtain acceptance of the plan or plans be extended through and including March 27, 2012; and that the Debtor have such other and further relief as is just and proper.

Dated: September 1, 2011
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
J. Landon Ellis (No. 4852)
Jeffrey R. Drobish (No. 5437)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
        mumford@lrclaw.com
        ellis@lrclaw.com
        drobish@lrclaw.com

*Counsel to Debtor and Debtor in Possession*

{864.001-W0016338.}

10